UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

SOO PARK and JAE LEE,

                         Plaintiffs,                **REPORT AND**
        -against-                       **RECOMMENDATION**

STATE FARM MUTUAL AUTOMOBILE     20-CV-1982 (JMA)(SIL)
INSURANCE COMPANY and ERICA
HROMAS,

                         Defendants.

-------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this diversity-breach of contract action, on referral from the Honorable Joan M. Azrack for report and recommendation, is Defendants' State Farm Mutual Automobile Insurance Company ("State Farm") and Erica Hromas ("Hromas," and together with State Farm, "Defendants") Motion to Dismiss the Complaint, pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(5) for insufficient service of process and 12(b)(6) for failure to state a cause of action. *See* Defendants' Motion to Dismiss the Complaint ("Defendants' Motion" or "Def. Mot."), Docket Entry ("DE") [14]. By way of Complaint dated April 30, 2020, Plaintiffs Soo Park ("Park") and Jae Lee ("Lee," and together with Park, "Plaintiffs") commenced this action against Defendants for: (1) breach of contract; (2) fraudulent transfer of insurance policy benefits; (3) breach of the implied covenant of good faith and fair dealing and unfair trade practices; and (4) economic coercion, harassment, and emotional distress. *See* Complaint ("Compl."), DE [1].

The portion of Defendants' Motion brought pursuant to Rule 12(b)(6) does not seek to dismiss the entire Complaint. Rather, if granted, one portion of Plaintiffs' breach of contract claim would survive as more fully addressed below. That being said, for the reasons set forth herein, the Court respectfully recommends that Defendants' Rule 12(b)(5) motion be denied, but their Rule 12(b)(6) motion granted in its entirety. Nonetheless, because the remaining value of Plaintiffs' breach of contract claim falls below the statutory threshold necessary for the Court to exercise its diversity jurisdiction, the Court respectfully recommends that this claim be dismissed without prejudice for refiling in the proper forum.

## I.    BACKGROUND

Unless otherwise indicated, the facts set forth herein are taken from the Complaint, and are accepted as true for purposes of the instant Report and Recommendation.

### A.  Initial Relationship Between the Parties

Plaintiffs are residents of Nassau County, New York. Compl. ¶ 6. Defendant State Farm is an Illinois corporation with its principal place of business in Bloomington, Illinois. *Id.* at ¶ 7. Defendant Hromas is a resident of Fulton County, Georgia, and at all relevant times was employed by State Farm as an Insurance Adjuster. *Id.* In or about February 2017, Park – the owner of a 2012 Mercedes Benz S63 AMG (the "Vehicle") – purchased an automobile insurance policy (the "Policy") for the Vehicle from State Farm. *Id.* at ¶ 9. Lee was an additional insured under the Policy, which provided "liability, personal injury protection, collision and

supplementary coverage" for the Vehicle, and expired at 12:00 a.m. on August 3, 2017. *Id.* at ¶¶ 6, 9. According to Plaintiffs, the Policy provided: (1) $150,000 worth of personal injury protection; (2) unlimited automobile collision coverage; (3) a $4,000 monthly work-loss limit, with a three-year maximum; (4) $100,000 worth of supplementary uninsured motorist coverage for bodily injury; and (5) $300,000 worth of underinsured motorist coverage for bodily injury. *Id.* at ¶¶ 10-13. Under a section of the Policy entitled, "Physical Damage Coverages," Plaintiffs were required to bring legal action against State Farm for physical damage to the Vehicle "within one year immediately following the date of the accident or loss." Policy at 42-43, 59.[1]

B. **Automobile Accident at Issue**

At approximately 4:00 p.m. on April 23, 2017, Lee was driving the Vehicle southbound on 169th Street towards the intersection of 169th Street and 45th Avenue in Queens County, New York. *Id.* at ¶ 14. As Lee arrived at the intersection, she "completely stopped at the stop sign in front of the crosswalk at North 169th Street." *Id.* at ¶ 15. After stopping, Lee proceeded southbound on 169th Street through the intersection. *Id.* at ¶ 16. As Lee exited the intersection, the Vehicle was struck by a vehicle driven by Andres D. Mora ("Mora"). *Id.* at ¶ 17. Mora had been speeding westbound on 45th Avenue, and rear-ended the Vehicle's left rear corner as he made a left turn from 45th Avenue onto South 169th Street. *Id.* After the impact of this first collision, the Vehicle spun 90 degrees to the left and collided head-on with a guardrail in front of a house on the other side of South 169th Street. *Id.* at ¶ 18. The Vehicle's

---

[1] The Policy, which is referenced in the Complaint, is attached as Exhibit C, DE [15-3], to Defendants' Declaration in Support of their Motion to Dismiss, DE [15].

driver-side airbag immediately deployed, rendering Lee unconscious. *Id.* Mora's automobile insurer determined his (Mora's) vehicle to be a "total loss" as a result of the accident. *Id.* Lee sustained allegedly "near-fatal" injuries from the accident, including loss of consciousness, post-concussion syndrome, and injuries to her "head, neck, shoulders, hands, back, knees, ankle, [and] foot." *Id.* at ¶ 19. Plaintiffs allege that Lee "has been medically treating [her injuries]," and will continue to seek treatment for these injuries "in the future." *Id.*

### C. Post-Accident Investigations

On or about April 27, 2017, Park filed an insurance claim with State Farm, and requested that State Farm "investigate the claim and provide policy benefits" to Plaintiffs. *Id.* at ¶ 20. Three days later, on April 30, 2017, Plaintiffs "sent State Farm photos of the skid mark from Mora's vehicle, photos of the damages on rear end corner and front of [the Vehicle], and the two vehicles' location [after the accident]." *Id.* at ¶ 21. On May 2, 2017, a State Farm employee conducted the requested inspection, which Plaintiffs contend was "incorrect," because State Farm's inspector allegedly "failed to include the point of the first collision, [the Vehicle's] rear end," in the inspection report. *Id.* at ¶ 22. On May 11, 2017, in response to a request from Mora's automobile insurer, the Government Employees Insurance Company ("GEICO"), Plaintiffs sent GEICO the same photographs that they had sent to State Farm. *Id.* at ¶ 23. After its investigation, GEICO determined that Lee was 80% at fault for the accident, a determination that Plaintiffs contend is "wrong" and have "repeatedly" disputed. *Id.* State Farm's investigation of the accident likewise culminated in an

allegedly erroneous determination by Hromas that Lee was 80% at fault for the accident, a conclusion which Plaintiffs have also repeatedly disputed. *Id.* at ¶ 24. On May 11, 2017, and thereafter on multiple occasions, Park "requested valid collision payment [of an] actual cash value of $45,000.00 for a total loss claim" because the cost of repairs to the Vehicle apparently "exceeded 75% of the actual cash value" of the Vehicle. *Id.* at ¶ 52.

On May 18, 2017, GEICO reinspected the Vehicle and confirmed the damage sustained from the accident. *Id.* at ¶ 25. Upon receiving GEICO's report, Plaintiffs sent it to State Farm and again disputed portions of State Farm's findings. *Id.* at ¶ 26. On June 6, 2017, a State Farm inspector "performed a re-inspection of [the Vehicle] and corrected his inspection report and estimates by including rear-end damages" sustained by the Vehicle. *Id.* at ¶ 27.[2] Thereafter, on June 6, 16, and 20, 2017, Plaintiffs "sent letters to Defendants to dispute [Hromas's] wrong liability determination," and "continuously left voice messages for [Hromas] to investigate the liability claim and change [Lee's] liability to zero percent (0%)," but received "no responses." *Id.* at ¶ 28. At that time, Lee repeatedly demanded that "State Farm declare [the Vehicle] to be a total loss" and that State Farm "send [Lee] a check for approximately $45,000.00" for the value of the Vehicle. *Id.* at ¶ 40. In response, Hromas "refused to pay the total loss value for [the Vehicle], stating that State Farm had already paid the maximum amount for the repairs." *Id.* at ¶ 41. Over the next

---

[2] While the Complaint alleges that Hromas conducted State Farm's initial investigation and determined that Lee was 80% at fault for the accident, *see* Compl. ¶ 24, Plaintiffs do not contend that she conducted any of State Farm's subsequent investigations detailed in the Complaint.

year and a half, until October 2018, Plaintiffs continued to dispute the findings of State Farm's and GEICO's investigations regarding Lee's liability for the accident, instead contending that Mora should be held 100% liable. *Id.* at ¶¶ 29-35.

### D. Plaintiffs' Post-Accident Interactions with Happy Auto

After the accident, Lee took the Vehicle to an automobile repair shop identified as Happy Auto ("Happy Auto"). *Id.* at ¶ 36. Happy Auto requested that Lee "sign a direct payment [authorization] form for the repairs" to the Vehicle, because Happy Auto apparently "needed funds for another business." *Id.* Lee signed the authorization form but "left the date on the form blank" and allegedly instructed Happy Auto not to use the form "until she had discussed the [authorization] form with [Park], to complete and authorize it." *Id.* Subsequent to this initial interaction, Park "notified Happy Auto and State Farm that the incomplete direct payment authorization form was withdrawn" because Lee "intentionally did not put the date on the form to discuss with the owner of the vehicle" and "was not the owner of the car and she was not authorized to sign it." *Id.* at ¶ 37. Throughout May-June 2017, Plaintiffs repeatedly requested that State Farm "not pay any money to Happy Auto" and were allegedly assured by an unknown State Farm representative that "State Farm [would] never pay any payment directly to Happy Auto or anyone." *Id.* at ¶ 38. Subsequently, however, State Farm allegedly paid $32,000 to Happy Auto for "body work" that Happy Auto performed on the Vehicle. *Id.* at ¶¶ 43-44, 48. On or about May 22, 2017, the automobile that Plaintiffs were renting while the Vehicle was

undergoing repairs sustained damage and broken glass, for which Plaintiffs paid approximately $285.00, and submitted a claim to State Farm. *Id.* at ¶ 90.

At or around the end of August 2017, Happy Auto attempted to return the Vehicle to Plaintiffs. *Id.* at ¶ 53. No sooner had Lee driven the Vehicle out of her driveway, than its engine stopped working, and continued to malfunction for the remainder of that day. *Id.* at ¶ 54. On or about September 1, 2017, Park returned the Vehicle to Happy Auto for further repairs. *Id.* at ¶¶ 54-55. Happy Auto attempted to fix the Vehicle until on or about September 26, 2017, at which point Park retrieved the car and brought it to a Mercedes dealership in Roslyn, New York, in order to repair certain mechanical issues that Happy Auto could not fix. *Id.* at ¶¶ 58-60. From September 30 to December 10, 2017, Happy Auto again attempted to repair the Vehicle, but was again unsuccessful. *Id.* at ¶¶ 62-65. On or about October 16-17, 2017, in relation to the accident, Lee received medical treatment in Seoul, South Korea, for which she paid $320.22. *Id.* at ¶¶ 88-89.

### E. **Plaintiffs' Interactions with Additional Mechanics**

On or about December 11, 2017, Park again brought the Vehicle to the Roslyn dealership, and received estimated repair costs of $6,618.00 to remedy multiple issues. *Id.* at ¶ 65. Park paid for a portion of the repairs, and left the Vehicle with the dealership until approximately January 16, 2018, for further work, a supplemental State Farm inspection, and further payments. *Id.* at ¶¶ 66-69. Park again left the Vehicle with the dealership from March 19 through April 4, 2018, at which point it was taken to another auto body shop identified as Sims Auto ("Sims

Auto"). *Id.* at ¶¶ 70-73. The Vehicle remained with Sims Auto until approximately May 5, 2019, during which time the Vehicle's "ABC hose works" were repaired, and for which Park paid $3,354.39. *Id.* at ¶ 74. From April 4 to May 5, 2018, Park paid $928.59 for a rental car, a cost that State Farm allegedly refused to reimburse. *Id.* at ¶ 75.

Over a year later, from September 2019 through February 2020, Park paid approximately $4,500.00 to two automobile shops identified as Eagle Nest Sport Motors, and All Out Motor, to further repair the Vehicle. *Id.* at ¶¶ 77-79. State Farm again refused to pay for this work. *Id.* at ¶ 80.

### F. **Procedural History**

Based on the above, Lee and State Farm participated in arbitration proceedings before the American Arbitration Association's ("AAA") New York No-Fault Arbitration Tribunal (the "Arbitration"), which were held on February 6, March 18, and June 3, 2020. *See* July 6, 2020 AAA Arbitration Award (the "Arbitration Award" or "Arb. Award"), DE [20]. One of the issues in dispute concerned Lee's reimbursement for lost wages for the period of April 23, 2017 through September 30, 2018. *Id.* at 3. The arbitrator reviewed documents submitted by the parties and heard live witness testimony and oral arguments from counsel. *Id.* at 2. In addition, on February 6, 2020, Lee was given "a full and fair opportunity to give testimony and be cross-examined." *Id.* Lee and State Farm also submitted post-hearing briefs on their respective positions and additional evidence. *Id.* On July 6, 2020, the arbitrator ruled in Lee's favor and awarded her $68,000.00 in lost earnings including interest,

attorneys' fees, and reimbursement of the forty-dollar fee paid to the designated organization. *Id*. at 7. The Arbitration Award further provided that it was "final and binding unless modified or vacated by a master arbitrator." *Id*. at 8. Plaintiffs appear to concede that the Award was issued and paid by State Farm. *See* DE [12] at 2.

Thereafter, on April 30, 2020, Plaintiffs commenced this action against Defendants. *See* Compl. The Complaint alleges that Defendants, over a three-year period: (1) breached the policy when they "deliberately and wrongfully delayed" the "payment of insurance policy benefits for loss of wages, auto repairs and the total loss value, medical expenses, rental car expenses and the loss of use [of the Vehicle], and auto glass damages"; (2) "fraudulently engaged in transferring [P]laintiffs' policy benefits for auto repairs and fraudulently paid [Plaintiffs'] benefits to an unauthorized auto body shop" without Plaintiffs' consent; (3) breached the "implied covenant of good faith and fair dealing, and unfair trade practices for failure to investigate the liability claim, unprofessional and improper inspection of [the Vehicle], wrongful determinations of liability and a total loss, and improper delay and denial in handling the claims"; and (4) "wrongfully inflicted economic coercion, harassment, and emotional distress." *See id*. at 1-2.

Through the Complaint, Plaintiffs seek judgment against each Defendant "in the amount of One Million Dollars ($1,000,000.00) in compensatory damages and One Million Dollars ($1,000,000.00) in punitive damages on each cause of action[,]" as well as an award of attorneys' fees and costs. *Id*. Defendants sought to file a pre-answer motion to dismiss for insufficient service of process and failure to state a claim

pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6), and were permitted to do so by Judge Azrack on December 11, 2020. *See* December 11, 2020 Electronic Order. On January 2, 2021, Defendants served Defendants' Motion, which the Plaintiffs opposed on February 22, 2021. *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Resp."), DE [17]. Judge Azrack referred Defendants' Motion to this Court for report and recommendation on May 25, 2021. *See* May 25, 2021 Electronic Order. For the reasons set forth below, the Court respectfully recommends that Defendants' Motion be granted in part and denied in part, and that the Complaint be dismissed in its entirety.

## II.    LEGAL STANDARDS

### A. <u>Fed. R. Civ. P. 12(b)(5)</u>

Federal Rule of Civil Procedure 12(b)(5) provides for dismissal of a complaint for insufficient service of process. Fed. R. Civ. P. 12(b)(5). "On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 Fed. App'x 202, 203 (2d Cir. 2010) (summary order); *see also Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016); *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003). "Because a Rule 12(b)(5) motion implicates 'whether [the court] has jurisdiction,' the court 'looks to matters outside the complaint.'" *Hines v. Roc-A-Fella Records, LLC*, No. 10-cv-4587, 2020 WL 1888832, at *1-2 (S.D.N.Y. Apr. 16, 2020) (quoting *Cassano*, 186 F. Supp. 3d at 320). "In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons." *DeLuca v. AccessIT Grp.,*

*Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). "Technical errors in a summons generally do not render service invalid," but "where the error actually results in prejudice to the defendant or demonstrates a flagrant disregard of Rule 4, service will be considered invalid and amendment need not be allowed." *Id.* at 65. Rule 4(e) governs service on an individual within the United States:

> Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by:
>
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process."

Fed. R. Civ. P. 4(e). Rule 4 (h)(1) governs service on business entities within the United States:

> Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>
> (1) in a judicial district of the United States:
>
>> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or

> (B) by delivering a copy of the summons and of the
> complaint to an officer, a managing or general agent, or any
> other agent authorized by appointment or by law to receive
> service of process and – if the agent is one authorized by
> statute and the statute so requires – by also mailing a copy
> of each to the defendant[.]

Fed. R. Civ. P. 4(h).  If a defendant is not properly served "within 90 days after the complaint is filed," the Court "must" dismiss the action without prejudice against the unserved defendant(s), "or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).  However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  *See id.*

"The plaintiff bears the burden of proof in showing that it had good cause in not timely serving the defendant."  *George v. Professional Disposables Intl., Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016) (quoting *AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt.*, 197 F.R.D. 104, 108 (S.D.N.Y. 2000)).  To establish good cause, "a plaintiff must demonstrate that despite diligent attempts, service could not be made due to exceptional circumstances beyond his or her control."  *Spinale v. United States*, No. 03-cv-1704, 2005 WL 659150, at *3 (S.D.N.Y. Mar. 16, 2005), *aff'd sub nom. Spinale v. Ball*, 352 Fed. App'x 599 (2d Cir. 2009); *accord George*, 221 F. Supp. 3d at 432; *Feingold v. Hankin*, 269 F. Supp. 2d 268, 276-77 (S.D.N.Y. 2003).  "Attorney error does not constitute good cause under Rule 4(m)."  *Counter Terrorist Grp. U.S. v. New York Mag.*, 374 Fed. App'x 233, 235 (2d Cir. 2010) (summary order).  Similarly, good cause does not exist where the plaintiff, upon learning that a defendant was not properly served, fails either to serve that defendant again within the time remaining under Rule 4(m) or to seek additional time within which to do

so. *Reed Holdings Inc. v. O.P.C. Corp.*, 122 F.R.D. 441, 444-45 (S.D.N.Y. 1988); *see also Cassano*, 186 F. Supp. 3d at 322 (plaintiffs' failure to ask for more time "weighs against" a finding of good cause); *AIG*, 197 F.R.D. at 108 (in determining good cause, court should consider not only whether plaintiff was initially diligent but also whether it moved "for an extension of time to serve the defendant" when its initial efforts failed (citing *Gordon v. Hunt*, 835 F.2d 452, 453 (2d Cir. 1987))).

Even in the absence of good cause, "a court has the discretion to grant an extension of time to serve the defendant." *Hahn v. Off. & Pro. Emps. Int'l Union, AFL-CIO*, 107 F. Supp. 3d 379, 382 (S.D.N.Y. 2015) (citing *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007)). "To obtain a discretionary extension absent a showing of good cause, 'the plaintiff must ordinarily advance some colorable excuse for neglect.'" *Cassano*, 186 F. Supp. 3d at 323 (quoting *Zapata*, 502 F.3d at 198). Courts then "balance justifiable excuses offered by the plaintiff, the length of the delay, and any prejudice to either party." *Spinale*, 2005 WL 659150, at *4.

**B. <u>Fed. R. Civ. P. 12(b)(6)</u>**

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at

1949.  But a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'"  *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009)).  Nevertheless, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted); *see Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  "The court's consideration on a motion under Fed. R. Civ. P. 12(b)(6) is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit."  *Messina v. Mazzeo*, 854 F. Supp. 116, 128 (E.D.N.Y. 1994) (citing *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)); *see also Burton v. Am. Fed'n of Gov't Employees (AFGE) 1988*, No. 11-cv-1416, 2012 WL 3580399, at *5 (E.D.N.Y. Aug. 17, 2012).

## III. DISCUSSION

The Complaint alleges causes of action for: (1) breach of contract; (2) fraudulent transfer of insurance policy benefits; (3) breach of the implied covenant of good faith and fair dealing and unfair trade practices; and (4) economic coercion, harassment, and emotional distress. *See generally* Compl. Applying the standards outlined above, and for the reasons set forth below, the Court respectfully recommends that Defendants' Motion be granted in part and denied in part, and that the Complaint be dismissed with leave to refile in a more limited form in the appropriate forum.

### A. <u>Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(5)</u>

Initially, Defendants assert that the Complaint should be dismissed because Plaintiffs "failed to timely serve [Defendants] within ninety days of filing the Complaint[,]" as required by Fed. R. Civ. P. 4(m). *See* Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def. Mem."), DE [16], at 7. In opposition, Plaintiffs contend that their failure to timely serve was attributable to the Covid-19 pandemic, which they assert constitutes "good cause" because it was "outside of [P]laintiffs' control." Pl. Resp. at 3.

As set forth above, Plaintiffs bear the burden of proving adequate service. *See Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010); *see also Vidurek v. Koskinen*, 789 Fed. App'x 889, 893 (2d Cir. 2019) (quoting *Meilleur v. Strong*, 682 F.3d 56, 61 (2d Cir. 2012)) ("[W]e generally will not reverse a district court's dismissal of an action for lack of service unless the appellant can advance some colorable excuse

for neglect.").  Park and Lee "must meet this burden by making a prima facie case of proper service through specific factual allegations and any supporting materials." *Sikhs for Justice v. Nath*, 850 F. Supp. 2d 435, 440 (S.D.N.Y. 2012) (internal citations and quotations omitted).  "[C]onclusory statements are not sufficient to overcome a defendant's sworn affidavit that service was improper." *Id.*; *see also Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002).  In evaluating a Rule 12(b)(5) motion, the court "must consider information outside the complaint to determine whether service was sufficient." *Corley v. Vance*, 365 F. Supp. 3d 407, 431 (S.D.N.Y. 2019), *aff'd sub nom. Corley v. Wittner*, 811 Fed. App'x 62 (2d Cir. 2020).

Applying these standards, the Court concludes that Plaintiffs have established good cause sufficient to defeat Defendants' motion.  As a threshold issue, the parties do not dispute that Plaintiffs' ninety-day window to serve Defendants expired on July 29, 2020.  *See* Def. Mem. at 8; Pl. Resp. at 4.  Plaintiffs served State Farm on July 31, 2020 (two days later) and Hromas on September 28, 2020 (61 days after the deadline had expired).  *See id.*  Plaintiffs therefore failed to timely serve Defendants under Rule 4(m).  Nevertheless, the Court determines that Plaintiffs have "good cause" for these failures, such that the time for Plaintiffs to serve Defendants should be extended, *nunc pro tunc*, up to and including September 28, 2020.  Multiple New York state and federal courts have permitted – and excused – relatively short violations of filing and service deadlines, where such delays were attributable to natural conditions outside of a plaintiff's control.  *See Para v. Nicholson*, No. 06-cv-6492T,

2009 WL 1076314, at *2-3 (W.D.N.Y. Apr. 21, 2009); *Lewis v. Rutkovsky*, 153 A.D.3d 450, 453-54, 58 N.Y.S.3d 391, 394-95 (1st Dep't 2017).  Here, Plaintiffs served State Farm merely two days after the expiration of the service deadline, a delay which, according to Plaintiffs, was caused by the Covid-19 pandemic – a circumstance unquestionably beyond Plaintiffs' control.  *See* Pl. Resp. at 4.  For this reason, the Court recommends that Plaintiffs' deadline to serve State Farm be extended, *nunc pro tunc*, to September 28, 2020.

Likewise, the Court finds that Plaintiffs have established good cause for their delay in serving Hromas.  According to the documents annexed to Plaintiffs' Response, State Farm provided Plaintiffs with Hromas's address – a P.O. Box in Atlanta, Georgia, at which service could not be perfected.  *See* Pl. Resp. at 17-20; Exhibit ("Ex.") B (Affidavit of Non-Service in Dunwoody, Georgia).  On July 31, 2020, State Farm provided Plaintiffs with Hromas's physical address in Dunwoody, Georgia.  *Id.*  Plaintiffs were unable to serve Hromas at this location, however, because the building was closed to non-residents due to the Covid-19 pandemic.  *Id.*  Next, again due to the pandemic, Plaintiffs mistakenly served an individual known as Erica Hromas at a physical address in Lincoln, Nebraska.  *See* Pl. Resp., Exs. C (Affidavit of Service in Lincoln, Nebraska); D (Email confirming mistaken service).  Upon receiving an email alerting Plaintiffs to the mistake, they again sought to properly serve Hromas, and finally did so on September 28, 2020, at a physical address in El Paso, Texas.  *See* Pl. Resp., Ex. E (Affidavit of Service in El Paso, Texas).  Based on these facts, the Court concludes that Plaintiffs have sufficiently established

their diligence in attempting to serve Hromas, which serves as their "good cause" in failing to do so due to conditions beyond their control. *Beauvoir v. U.S. Secret Service*, 234 F.R.D. 55, 56 (E.D.N.Y. 2006) (citing *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F.Supp. 654, 658 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 844 (2d Cir. 1999)). Accordingly, the Court recommends that Plaintiffs' time to serve Defendants be extended, *nunc pro tunc*, to September 28, 2020, and that Defendants' Fed. R. Civ. P. 12(b)(5) motion to dismiss be denied.

## B. <u>Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)</u>

### 1. Individual Claims Against Hromas

At the outset, Defendants move to dismiss the Complaint in its entirety against Hromas, arguing that she cannot be held personally liable because she was "acting as [an] agent of a disclosed principal" – State Farm – in her interactions with Plaintiffs. Def. Mem. at 9-10. The New York Court of Appeals has long held that, "where there is a disclosed principal-agent relationship and the contract relates to a matter of the agency, the agent will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd [her] personal liability for, or to, that of [her] principal." *Mencher v. Weiss*, 306 N.Y. 1, 4, 114 N.E.2d 177, 179 (1953) (citing *Keskal v. Modrakowski*, 249 N.Y. 406, 407 (1928)). Likewise, New York courts have held that employees and agents of insurance companies are rarely liable for an insurer's alleged breach of an insurance contract. *See, e.g., Gov't Employees Ins. Co. v. Saco*, No. 12-cv-5633, 2015 WL 4656512, at *4 (E.D.N.Y. Aug. 5, 2015); *New World Trading Co. v. Avshalomov*, No. 11-cv-6219, 2012 WL 4378055,

at *4-5 (S.D.N.Y. Sept. 24, 2012) ("Rarely have New York courts imposed individual liability for the acts of an agent working for a disclosed principal"); *Bardi v. Farmers Fire Ins. Co.*, 260 A.D.2d 783, 787, 687 N.Y.S.2d 768, 772 (3d Dep't 1999) ("As agents of a disclosed principal whose actions were undertaken at the direction of the insurer, the adjusters cannot be held personally responsible to plaintiffs.").

Under this caselaw, the Court concludes that Plaintiffs have failed to sufficiently allege that Hromas intended to "substitute or superadd [her] personal liability" for that of State Farm. *Mencher*, 306 N.Y. at 4, 114 N.E.2d at 179. Here, Plaintiffs make three allegations that include Hromas individually:

- "Defendants' [sic] failed, by both acts and omissions, to investigate and correct the wrongful liability decision, even though Plaintiff provided all evidence for MORA's 100% liability." Compl. ¶ 35;

- "Contrary to the law that payment of a physical damage claim shall not be conditioned upon the repair of the automobile, [Hromas] "refused to pay the total loss value for [the Vehicle], stating that State Farm had already paid the maximum amount for the repairs." *Id.* at ¶ 41;

- Defendants "illegally and fraudulently…paid approximately…$32,000.00 to Happy Auto without Plaintiff's authorization despite Happy Auto stating that Happy Auto performed body work only and did not perform mechanical work." *Id.* at ¶ 48.

These allegations are insufficient to render Hromas personally liable for her conduct on behalf of State Farm. *See Saco*, 2015 WL 4656512, at *5. Additionally, Plaintiffs have neither alleged any independent tort against Hromas that would support their fraud or other causes of action. *See Bardi*, 260 A.D.2d at 787, 687

N.Y.S.2d at 772. Accordingly, the Court recommends that Plaintiffs' claims against Hromas be dismissed with prejudice.

## 2. Breach of Contract

Plaintiffs allege a breach of contract claim against State Farm for its alleged failure to reimburse them for: (i) lost wages; (ii) medical bills and glass damage; (iii) the actual cash value for a total loss of the Vehicle or total costs of the repairs; and (iv) uninsured/underinsured motorist ("UM/UIM") benefits. In response, Defendants move to partially dismiss this claim, arguing that: (i) Plaintiffs' lost wages claim is barred by the doctrine of *res judicata*; (ii) Plaintiffs' claim for physical damage coverage is barred by the Policy's one-year suit limitation provision; and (iii) Plaintiffs failed to plead the conditions precedent to suit for UM or UIM benefits. *See* Def. Mem. at 10-17. Defendants do not seek to dismiss Plaintiffs' claim for medical bills. *See id.* at 2, n. 1. The Court analyzes each component of Plaintiffs' breach of contract cause of action in turn.

### a. Lost Wages

Initially, Defendants contend that Plaintiffs' lost wages claim is barred by *res judicata*, *see* Def. Mem. at 10-17, which is properly considered under a Rule 12(b)(6) motion to dismiss. *See Brown Media Corp. v. K &L Gates, LLP*, 551 B.R. 708, 717 (E.D.N.Y. 2015) (quoting *Thompson v. County of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994)) ("*Res judicata* challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)."). *Res judicata* "prevents a plaintiff from raising a claim that was or could have been raised in a prior suit." *McKithen v.*

*Brown*, 481 F.3d 89, 104 (2d Cir. 2007); *see also Migra v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 896 (1984); *Farbstein v. Hicksville Pub. Library*, 323 F. Supp. 2d 414, 422 (E.D.N.Y. 2004). To determine whether *res judicata* precludes subsequent litigation, a court must find that:  "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (alterations in original) (internal quotation marks and citations omitted); *see also Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000); *Kesten v. Eastern Sav. Bank*, No. 07-cv-2071, 2009 WL 303327, *3 (E.D.N.Y. Feb. 9, 2009) (citing *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)) (under New York's "transactional" approach to claim preclusion, a claim should have been brought if it arises "out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief"). "There is no question" that the principles of *res judicata* apply to awards in arbitration. *See New York State Dep't of Labor (Unemployment Ins. Appeal Bd.) v. New York State Div. of Human Rights*, 71 A.D.3d 1234, 1236, 897 N.Y.S.2d 740, 741 (3d Dep't 2010) (*citing Matter of American Ins. Co.*, 43 N.Y.2d 184, 189-90, 401 N.Y.S.2d 36, 38-39 (1977)); *see also Ammcon, Inc. v. Kemp*, 826 F. Supp. 639, 645 (E.D.N.Y. 1993). To determine whether particular claims are part of the same transaction, New York courts analyze "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their

treatment as a unit conforms to the parties' expectations or business understanding or usage." *Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 472 (S.D.N.Y. 2009).

Applying the above standards, the Court finds that Defendants have satisfied the three elements necessary to establish *res judicata*, and preclude Plaintiffs' lost wages claim. Initially, the parties do not dispute that: (i) Lee and State Farm participated in the Arbitration; (ii) the Arbitration concerned Lee's reimbursement for lost wages for the period of April 23, 2017 through September 30, 2018; (iii) the arbitrator reviewed documents submitted by the parties and heard live witness testimony and oral arguments from counsel; and (iv) on February 6, 2020, Lee was given "a full and fair opportunity to give testimony and be cross-examined." *See* Arb. Award. The parties were also permitted to submit post-hearing briefs on their respective positions and additional evidence. *Id.* On or about July 6, 2020, the arbitrator ruled in Lee's favor, and awarded her $68,000.00 in lost earnings including interest, attorneys' fees, and reimbursement of the forty-dollar fee paid to the designated organization. *See id.* at 7. Further, the Arbitration Award was "final and binding unless modified or vacated by a master arbitrator." *Id.* at 8. Plaintiffs also do not dispute that this sum was paid to Lee by State Farm. *See* DE [12] at 2. Based on these facts, the Court concludes that Defendants have established that the Arbitration Award should be recognized as a final judgment on the merits with respect to any lost wage claim that was or could have been asserted by Lee in connection with the underlying motor vehicle accident. *See Glob. Gold Mining, LLC*

*v. Ayvazian*, 612 Fed. App'x 11, 13 (2d Cir. 2015); *Emerson Electric Co. v. Holmes*, No. 16-cv-1390, 2020 WL 4592808, at *16 (E.D.N.Y. Aug. 11, 2020); *In re Am. Ins. Co. (Messinger-Aetna Cas. & Sur. Co.)*, 43 N.Y.2d 184, 189-90, 401 N.Y.S.2d 36, 38-40 (1977).

Further, Defendants have demonstrated that Lee and State Farm participated in the Arbitration proceedings and are parties to this matter, *see generally* Arb. Award, and that Plaintiffs' lost wage claim asserted in this action "[was], or could have been, raised in the prior action." *Pike*, 266 F.3d at 91. Indeed, Lee asserted – and prevailed on – her lost wage claim during the Arbitration. *See generally* Arb. Award. The lost wage claim asserted here is identical to the one asserted during the Arbitration – *i.e.*, a claim for Lee's lost wages incurred as a result of the April 23, 2017 accident. *See id.*

In reaching this conclusion, the Court declines to adopt Plaintiffs' apparent argument that the instant lost wage claim relates to a different or subsequent time period. Indeed, Lee was given the opportunity to supplement the record in the Arbitration and "provide the necessary information and documentation" to support her claim up until the time that the Arbitration was closed on June 3, 2020. Arb. Award at 6. Moreover, the Arbitration Award provides that as of the last hearing date on June 3, 2020, all "necessary documentation had been exchanged." *Id.* Lee also could have amended her claim at any time during the Arbitration and apparently did so regarding certain unpaid medical bills. *See id.* at 1. For these reasons, the Court determines that Plaintiffs' claim for Lee's subsequent lost wages incurred as a

result of the accident should have been raised during the Arbitration, and is therefore barred by *res judicata*. Accordingly, the Court respectfully recommends that this portion of Plaintiffs' breach of contract cause of action be dismissed with prejudice.

      b. <u>Physical Damage Coverages</u>

Defendants next argue that Plaintiffs' claims for automobile repairs, rental car expenses, loss of use of Plaintiffs' vehicle expenses, and auto glass damages are barred by the Policy's one-year suit limitation provision related to "Physical Damage Coverages." *See* Def. Mem. at 14-16. New York courts have routinely found contract-based limitations periods that shorten the otherwise applicable limitations period in which a party to a contract must bring suit under the contract to be valid and enforceable. *See Hudecek v. Travelers Ins. Co.*, No. 17-cv-7160, 2018 WL 6521915, at *5 (E.D.N.Y. Dec. 4, 2018), *report and recommendation adopted*, 2019 WL 456173 (E.D.N.Y. Feb. 5, 2019) ("The highest court of this state has held that an insured must comply with a property insurance policy's time to sue provisions if it wishes to litigate a denial of coverage."); *Corbett v. Firstline Security, Inc.*, 687 F. Supp. 2d 124, 128-29 (E.D.N.Y. 2009) (holding that "[i]t is well-settled that courts applying New York law will enforce a shortened statute of limitations when it is reasonable and agreed to by contract" and that "New York courts have consistently held one year to be a reasonable period of limitations"); *John v. State Farm Mut. Auto. Ins. Co.*, 116 A.D.3d 1010, 1011-12, 983 N.Y.S.2d 883, 884 (2d Dep't 2014) ("[T]he defendant established its prima facie entitlement to judgment as a matter of law by submitting, among other things, the subject insurance policy, which demonstrated that the one-year

limitations period found in the insurance policy expired prior to the commencement of this action.").

Relying on the above, the Court concludes that Plaintiffs' physical damage coverage claim is barred by the Policy's one-year suit limitation provision related to "Physical Damage Coverages." Under the section of the Policy entitled "Physical Damages Coverages"[3], Plaintiffs were permitted to bring legal action against State Farm for "physical damages" only if such action "[was] brought against [State Farm] within one year immediately following the date of the accident or loss." Policy at 42-43, 59. Based on this undisputed fact, and because Plaintiffs alleged that the accident occurred on April 23, 2017, *see* Compl. ¶¶ 14-17, they were required to commence any legal action pursuant to the Policy's Physical Damage Coverages section against State Farm by April 23, 2018. Likewise, Plaintiffs were required to commence their claim for glass damages to Lee's rental vehicle that allegedly occurred on May 22, 2017, *see* Compl. ¶ 90, no later than May 22, 2018. Despite these deadlines, Plaintiffs did not file the Complaint until April 30, 2020 – over two years after the expiration of the limitation period for Physical Damage Coverages related to the April 23, 2017 accident and nearly two years after the expiration of the limitation period for glass damages to the rental vehicle. Moreover, while Plaintiffs also argue, for the first time, that their claims "for the repairs, rentals, [and] loss of use expenses…are based on defendants' tortuous [*sic*] acts, not based on the contract," and therefore "are

---

[3] As set forth above, in deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court may consider documents referenced in the Complaint and documents that are in the parties' possession or that Plaintiffs knew of and relied on in bringing suit, such as the applicable insurance policy at issue here. *See Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

viable," Pl. Resp. at 10, they cannot avoid the Policy's unambiguous contractual limitations provision "simply by casting their contract claims in tort garb." *See Long Island Lighting Co. v. Stone & Webster Engineering Corp.*, 839 F. Supp. 183, 187 (E.D.N.Y. 1993). Accordingly, Plaintiffs' claim for automobile repair expenses, rental car and travel expenses, loss of use of Plaintiffs' vehicle expenses, and auto glass damages is untimely and this part of their breach of contract claim should also be dismissed with prejudice. *See Plon Realty Corp. v. Travelers Ins. Co.*, 533 F. Supp. 2d 391, 394 (S.D.N.Y. 2008) (dismissing amended complaint where the insured filed suit after the expiration of the insurance policy's two-year suit limitation provision).

### c. UM & UIM Benefits

Likewise, Defendants contend that Plaintiffs' claim for UM/UIM benefits should be dismissed as a matter of law because Plaintiffs allegedly failed to plead the conditions precedent to suit for UM/UIM benefits. *See* Def. Mem. at 16-17. In New York, UM/UIM coverage is triggered where the bodily injury limits of liability coverage of a tortfeasor's vehicle are less than the bodily injury limits of coverage of the insured, *see Maurizzio v. Lumbermens Mut. Cas. Co.*, 73 N.Y.2d 951, 953, 540 N.Y.S.2d 982, 983-84 (1989), and "the limits of liability of all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements." *Garcia v. State Farm Ins. Co.*, 232 A.D.2d 488, 489, 648 N.Y.S.2d 340, 340 (2d Dep't 1996); *see also* N.Y. Insur. Law § 3420(f)(2)(A). All of these conditions precedent must be pled to state a tenable cause of action. *See Maurizzio*, 73 N.Y.2d at 953, 540 N.Y.S.2d at 983-84.

Under New York law, Plaintiffs have failed to plead facts sufficient to state a cause of action for UM/UIM benefits. Indeed, Plaintiffs allege, without any factual support, that "Defendants should pay for UM/UIM benefits of $100,000 pursuant to [the] policy agreement." Compl. ¶ 108. The Complaint fails, however, to allege that: (i) the bodily injury limits of liability coverage of Mora's vehicle were less than the bodily injury limits available under the Policy; (ii) that Plaintiffs have exhausted those limits by payment of judgments or settlements; (iii) that Mora's policy limits were insufficient to compensate Lee for her injuries; and (iv) that Plaintiffs have filed a claim with State Farm for UM or UIM benefits. *See generally* Compl. Based on these pleading failures, the Court finds that Plaintiffs failed to allege the conditions precedent to suit for UM/UIM benefits, and because Plaintiffs have not sought leave to amend the Complaint as to this cause of action, respectfully recommends that Plaintiffs' breach of contract claim for UM/UIM benefits be dismissed with prejudice. *See Sutorius v. Hanover Ins. Co.*, 233 A.D.2d 332, 333-34, 649 N.Y.S.2d 183, 184 (2d Dep't 1996); *Garcia*, 232 A.D.2d at 489, 648 N.Y.S.2d at 340; *Maurizzio*, 73 N.Y.2d at 953, 540 N.Y.S.2d at 983-84.

d. Punitive Damages and Attorneys' Fees

In addition to their above claims regarding certain segments of Plaintiffs' breach of contract cause of action, Defendants contend that Plaintiffs' demand for punitive damages and attorneys' fees based on an alleged breach of contract also fails as a matter of law. *See* Def. Mem. at 24-25. In New York, punitive damages are not recoverable for an ordinary breach of contract, as their purpose is not to remedy a

private wrong but to vindicate public rights. *See Rocanova v. Equitable Life Assur. Soc.*, 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 342-43 (1994); *Reads Co., LLC v. Katz*, 72 A.D.3d 1054, 1056-1057, 900 N.Y.S.2d 131, 133-34 (2d Dep't 2010). To state a claim for punitive damages, a plaintiff must plead: (i) the defendant's conduct is actionable as an independent tort; (ii) the alleged tortious conduct is of an egregious nature; (iii) the egregious conduct is directed at the plaintiff; and (iv) the egregious conduct is part of a pattern directed at the public generally. *See New York University v. Continental Ins. Co.*, 87 N.Y.2d 308, 315, 639 N.Y.S.2d 283, 287 (1995). Further, in order to recover punitive damages against an insurance carrier, a plaintiff must demonstrate that the carrier, in its dealings with the general public, engaged in a fraudulent scheme evincing such a high degree of moral turpitude and such wanton dishonesty as to imply a criminal indifference to civil obligations. *See id.*; *Rocanova*, 83 N.Y.2d at 613, 612 N.Y.S.2d 339, 342-43. Punitive damages are not available for an isolated transaction such as breach of an insurance contract, even if committed willfully and without justification. *See Tate v. Metropolitan Life Ins. Co.*, 186 A.D.2d 859, 860, 587 N.Y.S.2d 813, 814 (3d Dep't 1992).

The Court concludes that Plaintiffs have failed to plead specific factual allegations that State Farm committed any intentional wrongdoing or egregious conduct or acted with reckless disregard for Plaintiffs' rights, and respectfully recommends that Plaintiffs' demand for punitive damages be dismissed with prejudice. Plaintiffs' request for attorneys' fees is similarly unfounded. Under New York law, absent an agreement or contractual provision to the contrary, an insured

party may not recover expenses incurred in bringing an affirmative action against an insurer to settle her rights under the insurance policy. *See Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006); *New York University*, 87 N.Y.2d at 324, 639 N.Y.S.2d at 292. Here, Plaintiffs commenced this affirmative action to assert their rights under the Policy, but have alleged no statute or Policy provision that would entitle them to attorneys' fees. *See Globecon Group, LLC*, 434 F.3d at 177. Accordingly, the Court respectfully recommends that Defendants' Motion be granted as to Plaintiffs' claims for breach of contract, punitive damages, and attorneys' fees, and that this portion of Plaintiffs' breach of contract cause of action be dismissed with prejudice. In granting Defendants' motion as to the breach of contract claim, the Court again notes that this cause of action as to certain medical bills survives.

### 3. Fraudulent Transfer of Insurance Policy Benefits

Plaintiffs next assert a cause of action against State Farm for fraudulent transfer of insurance policy benefits, which appears to arise from Plaintiffs' allegations that State Farm paid approximately $32,000 directly to Happy Auto, instead of to Plaintiffs, for repairs to the Vehicle. *See* Compl. ¶¶ 109-12. Defendants likewise move to dismiss this claim and argue that: (i) Plaintiffs fail to plead the elements of a fraud claim sufficient to comply with Fed. R. Civ. P. 9(b)'s heightened pleading requirements; and (ii) Plaintiffs' purported fraud claim is duplicative of their breach of contract claim. *See* Def. Mem. at 17-20. To establish fraud, a plaintiff must allege that the defendant made a "material misrepresentation," knowing that it was

false and intending to induce reliance, and that the plaintiff justifiably relied on the misrepresentation and suffered damages as a result. *See IKB Int'l S.A. v. Bank. of Am. Corp.*, 584 Fed. App'x 26, 27 (2d Cir. 2014) (internal quotation marks and citation omitted). Moreover, Plaintiffs' fraudulent transfer claim is subject to a heightened pleading requirement pursuant to Fed. R. Civ. P. 9(b). *See TIC Park Ctr. 9, LLC*, 2017 WL 7733134, at *6 (citations omitted). As a result, the Complaint must state with particularity the circumstances constituting fraud, meaning that it must: "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *IKB Int'l S.A.*, 584 Fed. App'x at 27-28 (internal quotation marks and citation omitted). Further, while State Farm's intent may be "averred generally," the Complaint must allege facts "giving rise to a strong inference that [State Farm] knew the statements to be false and intended to defraud [Plaintiffs]" at the time they were made." *N.Y. State Catholic Health Plan, Inc. v. Acad. O & P Assocs.*, 312 F.R.D. 278, 299 (E.D.N.Y. 2015) (internal quotation marks and citations omitted). A strong inference of fraudulent intent may be established either by alleging facts (a) showing that defendants "had both motive and opportunity to commit fraud," or (b) constituting "strong circumstantial evidence of conscious misbehavior or recklessness." *IKB Int'l S.A.*, 584 Fed. App'x at 27-28 (internal quotation marks and citations omitted).

The Court concludes that Plaintiffs have failed to plead facts necessary to establish their fraud cause of action. The Complaint vaguely alleges that "[a State

Farm] representative said, 'Yes, it's crystal clear. State Farm will never pay any payment directly to Happy Auto or anyone[,]'" and that "State Farm and [the] adjuster illegally and fraudulently…paid approximately…$32,000.00 to HAPPY AUTO without Plaintiff's authorization." Compl. ¶¶ 38, 48. Park and Lee do not allege any other supporting facts. *See generally* Compl. There are no allegations that: (1) State Farm intended to defraud Plaintiffs; (2) Plaintiffs reasonably relied on any misrepresentation made by State Farm; or (3) Plaintiffs suffered damage as a result of such reliance. These flaws are fatal. *See Stein v. Doukas*, 98 A.D.3d 1024, 1025, 951 N.Y.S.2d 173, 175 (2d Dep't 2012). Further Plaintiffs have failed to plead their purported fraud claim with the required particularity pursuant to Fed. R. Civ. P. 9(b), and have not identified who made the alleged misrepresentations, as well as when or where the alleged misrepresentations were made. *See* Fed. R. Civ. P. 9(b); *see also United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016).

Moreover, Plaintiffs' fraud cause of action is untenable because it is duplicative of their breach of contract claim. A party alleging fraud stemming from a breach of contract must also allege a legal duty independent of the contract – something that Plaintiffs have failed to assert. *See Clarke-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 656-57 (1987); *WIT Holding Corp. v. Klein*, 282 A.D.2d 527, 528, 724 N.Y.S.2d 66, 68 (2d Dep't 2001) ("[A] mere misrepresentation of an intention to perform under [a] contract is insufficient to allege fraud."). Here, the gravamen of Plaintiffs' fraud claim is that State Farm allegedly represented that it would not issue payment directly to Happy Auto, but then did. *See* Compl. ¶¶ 110,

112.  Moreover, Plaintiffs admit that Lee signed a direction to pay authorization and subsequently attempted to revoke it.  *Id*. at ¶¶ 36-38.  These allegations are neither separate and distinct from those giving rise to Plaintiffs' breach of contract claim, nor are they extraneous to the Policy.  For these reasons, the Court concludes that Plaintiffs have failed to set forth facts to sustain their fraud claim, *see Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 19-20 (2d Cir. 1996), and respectfully recommends that Plaintiffs' claim for fraudulent transfer of insurance policy benefits be dismissed with prejudice.

### 4. Breach of the Implied Covenant of Good Faith and Fair Dealing and "Unfair Trade Practices"

Defendants next seek to dismiss Plaintiffs' claim against State Farm for breach of the implied covenant of good faith and fair dealing and "unfair trade practices," contending that this claim:  (i) is duplicative of Plaintiffs' breach of contract claim; and (ii) is not a recognized cause of action under New York law.  Def. Mem. at 20-22.  In New York, "a covenant of good faith and fair dealing is implied in every contract." *Donnenfeld v. Petro, Inc.*, 333 F. Supp. 3d 208, 220 (E.D.N.Y. 2018) (citing *Payday Advance Plus, Inc. v. Findwhat.com, Inc.*, 478 F. Supp. 2d 496, 503 (S.D.N.Y. 2007)); *see also Carrillo v. Wells Fargo Bank, N.A.*, No. 18-cv-3095, 2019 WL 3714801, at *5 (E.D.N.Y. May 10, 2019), *report and recommendation adopted*, 2019 WL 3927369 (E.D.N.Y. Aug. 20, 2019).  Thus, a breach of this implied covenant is itself considered a breach of contract, and a complaint containing both claims is redundant as a matter of law.  *See  Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006) (The covenant  of  good faith and fair dealing "applies  where  an  implied  promise  is  so

interwoven into the contract 'as to be necessary for effectuation of the purposes of the contract.'") (internal quotation and citation omitted); *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002).

To the extent Plaintiffs allege "deceptive trade practices" by State Farm in violation of New York's General Business Law ("GBL") § 349, they must show:  (i) acts or practices by State Farm that are "consumer-oriented"; (ii) that such acts or practices are deceptive or misleading in a material way, and (iii) that Plaintiffs have been injured by those acts.  *See Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 343-44, 704 N.Y.S.2d 177, 183 (1999).  Further, it is well-settled that disputes between policyholders and insurance companies concerning the scope of coverage "are nothing more than private contractual disputes that lack the consumer impact necessary to state a claim pursuant to Section 349."  *DePasquale v. Allstate Ins. Co.*, 179 F. Supp. 2d 51, 62 (E.D.N.Y.), *aff'd*, 50 Fed. App'x 475 (2d Cir. 2002).

Again, Plaintiffs have failed to plead facts sufficient to defeat Defendants' Motion.  A cause of action for breach of the implied covenant of good faith and fair dealing must be dismissed where "the alleged breach is intrinsically tied to the damages allegedly resulting from a breach of the contract."  *Deer Park Enters., LLC v. Ail Sys., Inc.*, 57 A.D.3d 711, 711-12, 870 N.Y.S.2d 89, 90 (2d Dep't 2008) (internal citation and quotations omitted).  Here, Plaintiffs fail to set forth independent facts to support their claim, and merely reframe their breach of contract claim as a different cause of action.  Indeed, because both claims are based on the same conduct, allege the same damages, and seek identical relief, the Court respectfully

recommends granting Defendants' Motion as to this claim. *See Funk v. Allstate Ins. Co.*, No. 13-cv-5933, 2013 WL 6537031, at * 4 (E.D.N.Y. Dec. 13, 2013) ("[W]hen a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant.").

Similarly, the Court respectfully recommends that Plaintiffs' apparent GBL § 349 claim be dismissed, because the Complaint fails to plead the necessary elements. *See Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 13 (S.D.N.Y. 2020) (citing *Tinlee Enters., Inc. v. Aetna Cas. & Sur. Co.*, 834 F. Supp. 605, 610 (E.D.N.Y. 1993)); *Williams v. Black Entertainment Tel., Inc.*, No. 13-cv-1459, 2014 WL 585419, at *9 (E.D.N.Y. Feb. 14, 2014). There are no allegations concerning State Farm's alleged consumer-facing conduct, deceptive acts, or that Plaintiffs were injured by anything other than State Farm's alleged breach of contract. *See* Compl. ¶¶ 113-24. For this reason, the Court respectfully recommends again granting Defendants' Motion as to this cause of action. Accordingly, the Court respectfully recommends that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing and "unfair trade practices" be dismissed with prejudice.

### 5. Economic Coercion, Harassment, and Emotional Distress

Finally, Plaintiffs broadly assert a cause of action for "economic coercion, harassment, and emotional distress," *see* Compl. ¶¶ 125-30, which Defendants seek to dismiss because: (i) Plaintiffs have failed to allege the elements necessary to sustain such a claim; and (ii) under New York law, "damages for pain and suffering

or emotional distress are unavailable" where, as here, the parties' relationship is based in contract. Def. Mem. at 22-23. In New York State, a party alleging economic coercion or duress may "void a contract and recover damages when it establishes that it was compelled to agree to the contract terms because of a wrongful threat by the other party which precluded the exercise of its free will." *805 Third Avenue Co. v. M.W. Realty Assoc.*, 58 N.Y.2d 447, 451, 461 N.Y.S.2d 778, 780 (1983) (internal citations omitted). Additionally, New York law does not recognize a claim for civil harassment, *see Pandozy v. Tobey*, 335 Fed. App'x 89, 91 (2d Cir. 2009) (citing *New York ex rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 486 (S.D.N.Y. 2006)), while an intentional infliction of emotional distress claim "requires a showing of: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.'" *Williams v. Geraci*, No. 14-cv-5742, 2020 WL 5848738, at *6 (E.D.N.Y. Sept. 30, 2020) (quoting *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019)).

Plaintiffs have failed to satisfy their pleading burdens as to any of this claim's three components. The economic coercion component of Plaintiffs' claim fails because Plaintiffs do not seek to void the Policy – as would be the outcome of a successful economic coercion claim – but actually seek to enforce their rights under the Policy. *See generally* Compl. Plaintiffs also fail to allege that they were compelled to agree to the Policy's terms because of State Farm's wrongful action, which precluded them

from exercising their free will.  *See id.* at 28-29; *see also In re 4218 Partners LLC*, No. 19-cv-44444, 2020 WL 4778155, at *5 (Bankr. E.D.N.Y. Aug. 17, 2020).

The harassment component of Park's and Lee's claim fails because not only can a breach of contract "not to be considered a tort unless a legal duty independent of the contract itself has been violated[,]" but the "legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be dependent upon the contract." *Clarke-Fitzpatrick, Inc.*, 70 N.Y.2d at 389, 521 N.Y.S.2d at 656-57.  Here, the facts underlying Plaintiffs' alleged harassment stem from State Farm's alleged breach of the Policy.  *See* Compl. ¶¶ 125-30.  Plaintiffs do not allege the violation of any legal duty independent of the Policy.  Furthermore, as noted above, New York law does not recognize claims for civil harassment.  *See Pandozy*, 335 Fed. App'x at 91.

Finally, the emotional distress component fails because damages for emotional distress are unavailable where, as here, the parties' relationship is based in contract. *See Harary v. Allstate Ins. Co.*, 983 F. Supp. 95, 100 (E.D.N.Y. 1997); *Wehringer v. Standard Sec. Life Ins. Co.*, 57 N.Y.2d 757, 759, 454 N.Y.S.2d 984, 984 (1982).  Nor have Plaintiffs pled any facts demonstrating outrageous conduct or supporting an inference that State Farm owed an extra-contractual duty to Plaintiffs.  Accordingly, the Court respectfully recommends that Plaintiffs' claim for "economic coercion, harassment, and emotional distress" be dismissed with prejudice.

## C. <u>Subject Matter Jurisdiction Over Plaintiffs' Remaining Claim</u>

Having determined that all of Plaintiffs' claims that are the subject of Defendants' Motion should be dismissed, the Court *sua sponte* concludes that it lacks subject matter jurisdiction over the remaining portion of Plaintiffs' breach of contract cause of action concerning certain medical benefits, and accordingly recommends that this claim be dismissed without prejudice for refiling in the proper forum. Federal courts are courts of limited jurisdiction, and have subject matter jurisdiction only over cases in which there is a federal question, or in which there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00. *See* 28 U.S.C. §§ 1331, 1332; *see also Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 552, 125 S. Ct. 2611, 2617 (2005); *County of Nassau, N.Y. v. Hotels.com, LP,* 577 F.3d 89, 91 (2d Cir. 2009). This requirement is not waivable, and, as such, the question of subject matter jurisdiction may be raised at any time by any party or by a court *sua sponte. See Oscar Gruss & Son. Inc. v. Hollander,* 337 F.3d 186, 193 (2d Cir. 2003); *see also Henderson ex rel. Henderson v. Shinseki,* 562 U.S. 428, 429, 131 S. Ct. 1197, 1202, (2011). Further, should the Court determine that it lacks subject matter jurisdiction, it must recommend dismissal of Plaintiff's causes of action without ruling on the underlying merits. *See* Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, 126 S. Ct. 1235, 1244 (2006); *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont,* 565 F.3d 56, 62-63 (2d Cir. 2009).

Here, there is no federal question at issue.  To invoke the Court's diversity jurisdiction, the Plaintiffs must establish that the parties are citizens of different states and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.  While citizenship in this case is diverse, *see* Compl. ¶¶ 6-7, Park and Lee's remaining claim seeks only $320.22 from Defendants for reimbursement of Lee's medical bills, an amount that fails to satisfy the amount-in-controversy requirement.  *See* Compl. ¶¶ 88-89; 28 U.S.C. §§ 1331, 1332.  For this reason, the Court respectfully recommends that the remaining portion of Plaintiffs' breach of contract cause of action be dismissed without prejudice for refiling in the proper forum.

## IV.  CONCLUSION

For the reasons set forth above, and because Plaintiffs have not sought leave to amend the Complaint, the Court respectfully recommends that Defendants' Rule 12(b)(5) motion to dismiss be denied, but their Rule 12(b)(6) motion be granted, and that the Complaint be dismissed with prejudice with the exception of Plaintiffs' breach of contract cause of action concerning $320.22 in medical benefits.  Because the Court lacks subject matter jurisdiction over this portion of Plaintiffs' breach of contract claim, the Court respectfully recommends that it be dismissed without prejudice for refiling in the proper forum.

## V.  OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt

of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, No. 05-cv-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York
            October 20, 2021        /s/ Steven I. Locke
                                          STEVEN I. LOCKE
                                          United States Magistrate Judge