UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SOO PARK and JAE LEE,

                             Plaintiffs,         **REPORT AND**
       -against-                       **RECOMMENDATION**

STATE FARM MUTUAL AUTOMOBILE    20-CV-1982 (JMA)(SIL)
INSURANCE COMPANY and ERICA
HROMAS,

                         Defendants.
------------------------------------------------------------x
**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court in this diversity-breach of contract action, is
Plaintiffs' Soo Park ("Park") and Jae Lee ("Lee," together, "Plaintiffs") Motion for
Leave to Amend the Complaint, pursuant to Federal Rules of Civil Procedure ("Fed.
R. Civ. P.") 15(a). *See* Plaintiffs' Motion to Amend the Complaint ("Plaintiffs' Motion"
or "Pl. Mot."), Docket Entry ("DE") [39]. By way of Complaint dated April 30, 2020,
Plaintiffs commenced this action against Defendants State Farm Mutual Automobile
Insurance Company ("State Farm") and Erica Hromas ("Hromas," together,
"Defendants") for: (1) breach of contract; (2) fraudulent transfer of insurance policy
benefits; (3) breach of the implied covenant of good faith and fair dealing and unfair
trade practices; and (4) economic coercion, harassment, and emotional distress. *See*
Complaint ("Compl."), DE [1]. For the reasons set forth herein, the Court respectfully
recommends that Plaintiffs' Motion be denied.[1]

---

[1] Over the years, there has been some debate in this Circuit as to whether a motion to
amend is considered dispositive or non-dispositive for the purposes of whether a Magistrate
Judge's ruling should be issued as a Report and Recommendation or as a Decision and Order.
*See Louis v. Metro. Transit Auth.*, No. 12-cv-6333, 2014 WL 5311455, at *1 (E.D.N.Y. Oct. 16,

## I.    BACKGROUND

Unless otherwise indicated, the facts set forth herein are taken from the proposed Amended Complaint, *see* Ex. 1 to Plaintiffs' Motion, Proposed Amended Complaint ("Am. Compl."), DE [39-1], and are accepted as true for purposes of this Report and Recommendation.

### A.  <u>Initial Relationship Between the Parties</u>

Plaintiffs are residents of Nassau County, New York.  Am. Compl. ¶ 6. Defendant State Farm is an Illinois corporation with its principal place of business in Bloomington, Illinois.  *Id.* at ¶ 7.  Defendant Hromas is a resident of Fulton County, Georgia, and at all relevant times was employed by State Farm as an Insurance Adjuster.  *Id.*  In or about February 2017, Park – the owner of a 2012 Mercedes Benz S63 AMG (the "Vehicle") – purchased an automobile insurance policy (the "Policy") for the Vehicle from State Farm.  *Id.* at ¶ 9.  Lee was an additional insured under the Policy, which provided "liability, personal injury protection, collision and supplementary coverage" for the Vehicle, and expired at 12:00 a.m. on August 3, 2017. *Id.* at ¶¶ 6, 9.  According to Plaintiffs, the Policy provided:  (1) $150,000 worth of

---

2014) (summarizing that the Second Circuit has referred to a motion to amend as a non-dispositive matter, but has not explicitly decided the issue, and that district courts in this circuit have suggested that a magistrate judge's denial of a motion to amend a complaint should be treated as dispositive, while a grant of the same motion should be treated as non-dispositive); *Allen v. United Parcel Serv., Inc.*, 988 F. Supp. 2d 293, 297 (E.D.N.Y. 2013) (noting that authority is divided about whether a motion to amend a complaint is a dispositive or non-dispositive matter and declining to take a position where court would adopt the Report and Recommendation under either standard).  In an abundance of caution, and because the Court is recommending denying Plaintiffs' motion to amend, the Court issues a Report and Recommendation.  *See Fossil Grp., Inc. v. Angel Seller LLC*, 627 F. Supp. 3d 180, 188 (E.D.N.Y. 2022) (courts generally issue an R&R when denying a motion to amend the complaint).

personal injury protection; (2) unlimited automobile collision coverage; (3) a $4,000 monthly work-loss limit, with a three-year maximum; (4) $100,000 worth of supplementary uninsured motorist coverage for bodily injury; (5) $300,000 worth of underinsured motorist coverage for bodily injury; (6) rental car coverage; (7) and mileage reimbursement of up to $50 per day.  *Id.* at ¶ 9.  Under a section of the Policy entitled, "Physical Damage Coverages," Plaintiffs were required to bring legal action against State Farm for physical damage to the Vehicle "within one year immediately following the date of the accident or loss."  Policy at 42-43, 59.[2]

## B. <u>Automobile Accident at Issue</u>

At approximately 4:00 p.m. on April 23, 2017, Lee was driving the Vehicle southbound on 169th Street towards the intersection of 169th Street and 45th Avenue in Queens County, New York.  Am. Compl. ¶ 10.  As Lee arrived at the intersection, she "completely stopped at the stop sign in front of the crosswalk at North 169th Street."  *Id.* at ¶ 2.[3]  After stopping, Lee proceeded southbound on 169th Street through the intersection.  *Id.* at ¶ 3.  As Lee exited the intersection, the Vehicle was struck by a vehicle driven by Andres D. Mora ("Mora").  *Id.*  Mora had been speeding westbound on 45th Avenue, and hit the Vehicle's left rear corner as he made a left turn from 45th Avenue onto South 169th Street.  *Id.*  After the impact of this first collision, the Vehicle spun 90 degrees to the left and collided head-on with a guardrail

---

[2] The Policy, which is referenced in the Amended Complaint, is attached as Exhibit C, DE [15-3], to Defendants' Declaration in Support of their Motion to Dismiss, DE [15].

[3] Due to what appears to be a formatting error, there are two sets of paragraphs labeled 1 through 10 in the Amended Complaint.  Unless otherwise indicated, this citation and all subsequent citations to paragraphs 1 through 10 refer to the paragraphs appearing on pages 4 through 5 of the Amended Complaint.

in front of a house on the other side of South 169th Street. *Id.* at ¶ 4. The Vehicle's driver-side airbag immediately deployed, rendering Lee unconscious. *Id.* Mora's automobile insurer determined his (Mora's) vehicle to be a "total loss" as a result of the accident. *Id.* Lee sustained allegedly "near-fatal" injuries from the accident, including loss of consciousness, post-concussion syndrome, and injuries to her "head, neck, shoulders, hands, back, knees, ankle, [and] foot." *Id.* at ¶ 5. Plaintiffs allege that Lee "has been medically treating [her injuries]," and will continue to seek treatment for these injuries "in the future." *Id.*

### C. **Post-Accident Investigations**

On or about April 27, 2017, Park filed an insurance claim with State Farm, and requested that State Farm "investigate the claim and provide policy benefits" to Plaintiffs. *Id.* at ¶ 6. Three days later, on April 30, 2017, Plaintiffs "sent State Farm photos of the skid mark from Mora's vehicle, photos of the damages on rear end corner and front of [the Vehicle], and the two vehicles' location [after the accident]." *Id.* at ¶ 7. On May 2, 2017, a State Farm employee conducted the requested inspection, which Plaintiffs contend was "incorrect," because State Farm's inspector allegedly "failed to include the point of the first collision, [the Vehicle's] rear end," in the inspection report. *Id.* at ¶ 8. On May 11, 2017, in response to a request from Mora's automobile insurer, the Government Employees Insurance Company ("GEICO"), Plaintiffs sent GEICO the same photographs that they had sent to State Farm. *Id.* at ¶ 9. After its investigation, GEICO determined that Lee was 80% at fault for the accident, a determination that Plaintiffs contend is "wrong" and have "repeatedly"

disputed. *Id.* State Farm's investigation of the accident likewise culminated in an allegedly erroneous determination by Hromas that Lee was 80% at fault for the accident, a conclusion which Plaintiffs have also repeatedly disputed. *Id.* at ¶ 10. On May 11, 2017, and thereafter on multiple occasions, Park "requested valid collision payment [of an] actual cash value of $45,000.00 for a total loss claim" because the cost of repairs to the Vehicle apparently "exceeded 75% of the actual cash value" of the Vehicle. *Id.* at ¶ 39.

On May 18, 2017, GEICO reinspected the Vehicle and confirmed the damage sustained from the accident. *Id.* at ¶ 12. Upon receiving GEICO's report, Plaintiffs sent it to State Farm and again disputed portions of State Farm's findings. *Id.* at ¶ 13. On June 6, 2017, a State Farm inspector "performed a re-inspection of [the Vehicle] and corrected his inspection report and estimates by including rear-end damages" sustained by the Vehicle. *Id.* at ¶ 14.[4] Thereafter, on June 6, 16, and 20, 2017, Plaintiffs "sent letters to Defendants to dispute [Hromas's] wrong liability determination," and "continuously left voice messages for [Hromas] to investigate the liability claim and change [Lee's] liability to zero percent (0%)," but received "no responses." *Id.* at ¶ 15. At that time, Lee repeatedly demanded that "State Farm declare [the Vehicle] to be a total loss" and that State Farm "send [Lee] a check for approximately $45,000.00" for the value of the Vehicle. *Id.* at ¶ 27. In response, Hromas "refused to pay the total loss value for [the Vehicle], stating that State Farm

---

[4] While the Amended Complaint alleges that Hromas conducted State Farm's initial investigation and determined that Lee was 80% at fault for the accident, *see* Am. Compl. ¶ 10, Plaintiffs do not contend that she conducted any of State Farm's subsequent investigations detailed in the Amended Complaint.

had already paid the maximum amount for the repairs." *Id.* at ¶ 28. Over the next year and a half, until October 2018, Plaintiffs continued to dispute the findings of State Farm's and GEICO's investigations regarding Lee's liability for the accident, instead contending that Mora should be held 100% liable. *Id.* at ¶¶ 16-22. On or about November 4, 2021, Plaintiffs submitted to Defendants an "Accident Reconstruction Report" and letter prepared by GIECO, which allegedly admitted that Mora was 100% liable for the accident. *Id.* at ¶ 99.

### D. **Plaintiffs' Post-Accident Interactions with Happy Auto**

After the accident, Lee took the Vehicle to an automobile repair shop identified as Happy Auto. *Id.* at ¶ 23. Happy Auto requested that Lee "sign a direct payment [authorization] form for the repairs" to the Vehicle, because Happy Auto apparently "needed funds for another business." *Id.* Lee signed the authorization form but "left the date on the form blank" and allegedly instructed Happy Auto not to use the form "until she had discussed the [authorization] form with [Park], to complete and authorize it." *Id.* Subsequent to this initial interaction, Park "notified Happy Auto and State Farm that the incomplete direct payment authorization form was withdrawn" because Lee "intentionally did not put the date on the form to discuss with the owner of the vehicle" and "was not the owner of the car and she was not authorized to sign it." *Id.* at ¶ 24. Throughout May-June 2017, Plaintiffs repeatedly requested that State Farm "not pay any money to Happy Auto" and were allegedly assured by an unknown State Farm representative that "State Farm [would] never pay any payment directly to Happy Auto or anyone." *Id.* at ¶ 25. Subsequently,

however, State Farm allegedly paid $32,000 to Happy Auto for "body work" that Happy Auto performed on the Vehicle. *Id.* at ¶¶ 30-31, 35.

At or around the end of August 2017, Happy Auto attempted to return the Vehicle to Plaintiffs. *Id.* at ¶ 40. No sooner had Lee driven the Vehicle out of her driveway, than its engine stopped working, and continued to malfunction for the remainder of that day. *Id.* at ¶ 41. On or about September 1, 2017, Park returned the Vehicle to Happy Auto for further repairs. *Id.* at ¶¶ 41-42. Happy Auto attempted to fix the Vehicle until on or about September 26, 2017, at which point Park retrieved the car and brought it to a Mercedes dealership in Roslyn, New York, in order to repair certain mechanical issues that Happy Auto could not fix. *Id.* at ¶¶ 45-47. From September 30 to December 10, 2017, Happy Auto again attempted to repair the Vehicle, but was again unsuccessful. *Id.* at ¶¶ 49-52. Plaintiffs repeatedly requested reimbursement of $4,314.96 spent on rental cars and Ubers during this time, which Defendants refused. *Id.* at ¶ 43.

### E. **Plaintiffs' Interactions with Additional Mechanics**

On or about December 11, 2017, Park again brought the Vehicle to the Roslyn dealership, and received estimated repair costs of $6,618.00 to remedy multiple issues. *Id.* at ¶ 52. Park paid for a portion of the repairs, and left the Vehicle with the dealership until approximately January 16, 2018, for further work, a supplemental State Farm inspection, and further payments. *Id.* at ¶¶ 53-56. Park again left the Vehicle with the dealership from March 19 through April 4, 2018, at which point it was taken to another auto body shop identified as Sims Auto. *Id.* at

¶¶ 57-60.  The Vehicle remained with Sims Auto until approximately May 5, 2019, during which time the Vehicle's "ABC hose works" were repaired, and for which Park paid $3,354.39.  *Id.* at ¶ 61.  From April 4 to May 5, 2018, Park paid $928.59 for a rental car, a cost that State Farm allegedly refused to reimburse.  *Id.* at ¶ 62.  From September 2019 through February 2020, Park paid approximately $4,500.00 to two automobile shops identified as Eagle Nest Sport Motors and All Out Motor to further repair the Vehicle.  *Id.* at ¶¶ 65-67.  State Farm again refused to pay for this work. *Id.* at ¶ 68.

Plaintiffs further allege that they spent a total of $25,000 on travel expenses between April 23, 2017 and April 22, 2022 as a result of the accident.  *Id.* at ¶ 75. Between July 26, 2019 and December 31, 2021, Plaintiffs repeatedly requested reimbursement for these expenses, but have not been reimbursed to date.  *Id.* at ¶ 76.

### F. <u>Procedural History</u>

Based on the above, Lee and State Farm participated in arbitration proceedings before the American Arbitration Association's ("AAA") New York No-Fault Arbitration Tribunal (the "Arbitration"), which were held on February 6, March 18, and June 3, 2020.  *See* July 6, 2020 AAA Arbitration Award (the "Arbitration Award" or "Arb. Award"), DE [20].  One of the issues in dispute concerned Lee's reimbursement for lost wages for the period of April 23, 2017 through September 30, 2018.  *Id.* at 3.  The arbitrator reviewed documents submitted by the parties and heard live witness testimony and oral arguments from counsel.  *Id.* at 2.  In addition,

on February 6, 2020, Lee was given "a full and fair opportunity to give testimony and be cross-examined." *Id*. Lee and State Farm also submitted post-hearing briefs on their respective positions and additional evidence. *Id*. On July 6, 2020, the arbitrator ruled in Lee's favor and awarded her $68,000.00 in lost earnings including interest, attorneys' fees, and reimbursement of the forty-dollar fee paid to the designated organization. *Id*. at 7. The Arbitration Award further provided that it was "final and binding unless modified or vacated by a master arbitrator." *Id*. at 8. Plaintiffs appear to concede that the Award was issued and paid by State Farm. *See* DE [12] at 2.

Thereafter, on April 30, 2020, Plaintiffs commenced this action against Defendants. *See* Compl. The Complaint alleged that Defendants, over a three-year period: (1) breached the policy when they "deliberately and wrongfully delayed" the "payment of insurance policy benefits for loss of wages, auto repairs and the total loss value, medical expenses, rental car expenses and the loss of use [of the Vehicle], and auto glass damages"; (2) "fraudulently engaged in transferring [P]laintiffs' policy benefits for auto repairs and fraudulently paid [Plaintiffs'] benefits to an unauthorized auto body shop" without Plaintiffs' consent; (3) breached the "implied covenant of good faith and fair dealing, and unfair trade practices for failure to investigate the liability claim, unprofessional and improper inspection of [the Vehicle], wrongful determinations of liability and a total loss, and improper delay and denial in handling the claims"; and (4) "wrongfully inflicted economic coercion, harassment, and emotional distress." *See id.* at 1-2.

Through the Complaint, Plaintiffs sought judgment against each Defendant "in the amount of One Million Dollars ($1,000,000.00) in compensatory damages and One Million Dollars ($1,000,000.00) in punitive damages on each cause of action[,]" as well as an award of attorneys' fees and costs. *Id.* On January 2, 2021, Defendants moved to dismiss the Complaint for insufficient service of process and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6) respectively. DE [14]. Following a referral by Judge Azrack, this Court recommended that Defendants' 12(b)(5) motion be denied, and that Defendants' 12(b)(6) motion be granted. *See* Order Referring Motion dated May 25, 2021; Report and Recommendation ("R&R"), DE [22]. Specifically, the Court recommended that the Complaint against both Defendants be dismissed with prejudice, except for Plaintiffs' breach of contract claim concerning medical benefits. *See* R&R at 38. With respect to that cause of action, the Court recommended that it be dismissed without prejudice due to a lack of subject matter jurisdiction. *See id.* at 37-38. On January 27, 2022, Judge Azrack adopted this Court's Report and Recommendation, except that: (1) Plaintiffs' breach of contract claim concerning uninsured/underinsured ("UM/UIM") benefits was dismissed without prejudice; and (2) Plaintiffs' breach of contract claim for medical benefits was not dismissed. *See* DE [26]. Judge Azrack further denied Plaintiffs leave to amend the Complaint, based on a failure to submit a proposed amended complaint or otherwise indicate what new facts would be alleged. *See id.*

Following two settlement conferences before Judge Azrack on February 16, 2022 and March 15, 2022 respectively, the parties settled Plaintiffs' remaining claim

for breach of contract concerning medical benefits. *See* DEs [28], [30]. Subsequently, Plaintiffs refused to sign a stipulation of dismissal unless State Farm included language stating that Plaintiffs "may withdraw the remaining claims and refile them and/or amend the complaint," a request to which Defendants did not agree. *See* DE [31]. Judge Azrack held a further settlement conference to resolve this issue, which was ultimately unsuccessful. *See* DE [36]. Pursuant to a court-ordered briefing schedule, the present motion for leave to amend was filed on October 31, 2022. *See* Pl. Mot. Defendants oppose. *See* Defendants' Memorandum in Opposition to Plaintiffs' Motion to Amend ("Opp."), DE [41].

Plaintiffs' proposed Amended Complaint is largely identical to the original Complaint, but for: (1) an additional claim for breach of contract based on Defendants' failure to reimburse Plaintiffs for travel expenses in the amount of $25,000; (2) the omission of Plaintiffs' breach of contract claims for failure to reimburse medical expenses and pay UM/UIM benefits; (3) a revised claim for lost wages, seeking $74,933.33 rather than $144,000; and (4) a request for $1 million in additional punitive damages. *See generally* Pl. Mot.; Am. Compl. For the reasons set forth below, the Court respectfully recommends that Plaintiffs' Motion be denied.

## II.   LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 15(a), courts have discretion to allow parties to amend their pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("Under Fed. R. Civ. P. Rule 15(a), leave to amend shall be freely given when justice so requires.");

*Amaya v. Roadhouse Brick Oven Pizza, Inc.*, 285 F.R.D. 251, 253 (E.D.N.Y. 2012) ("A court should freely give leave when justice so requires, and such leave is in the court's discretion.") (internal quotation omitted).  The amendment standard is liberal so as to permit plaintiffs "to assert matters that were overlooked or were unknown at the time of the original complaint or answer."  *RCX I, LLC v. Pitter-Nelson*, No. 11-cv-03513, 2014 WL 5809514, at *5 (S.D.N.Y. Nov. 6, 2014) (internal quotation marks, citation and alterations omitted); *see Assam v. Deer Park Spring Water, Inc.*, 163 F.R.D. 400, 404 (E.D.N.Y. 1995) ("[Fed. R. Civ. P.] 15(a) dictates that motions to amend complaints be liberally granted absent a good reason to the contrary . . . .").  Leave to amend should only be denied "if there is delay, bad faith, futility, or prejudice to the non-moving party."  *Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 445 (E.D.N.Y. 2009) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)).  The party opposing a motion to amend bears the burden of establishing that the amendment should be denied.  *See Joinnides v. Floral Park–Bellerose Union Sch. Dist.*, No. 12-CV-5682, 2015 WL 1476422, at *9 (E.D.N.Y. Mar. 31, 2015) ("With respect to the Rule 15(a) factors, '[t]he party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial or futile.' ") (quoting *Cummings–Fowler v. Suffolk Cty. Cmty. Coll.*, 282 F.R.D. 292, 296 (E.D.N.Y. 2012)).

"The futility of an amendment is determined by whether it could survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) . . . ."  *E&E Co. v. London Luxury LLC*, 571 F. Supp. 3d 64, 67 (S.D.N.Y. 2021) (quoting *R & M*

*Jewelry, LLC v. Michael Anthony Jewelers, Inc.*, 221 F.R.D. 398, 399 (S.D.N.Y. 2004)). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007)). In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009)).

## III.  DISCUSSION

Plaintiffs seek to amend the Complaint to:  (1) assert an additional cause of action for breach of contract based on a failure to reimburse $25,000 in travel expenses; (2) revise their breach of contract claim for lost wages to seek $74,933.33 plus interest; and (3) seek a total of $2 million in punitive damages.  *See* Pl. Mot.; Am. Compl.  The proposed Amended Complaint is identical to the Complaint in all other respects, except that it omits Plaintiffs' breach of contract claims based on a failure to pay medical benefits and UM/UIM benefits.  *See generally* Am. Compl.  Defendants argue that Plaintiffs' Motion should be denied because:  (1) Plaintiffs' proposed new and revised claims would not survive a motion to dismiss and, (2) Plaintiffs have not cured the defects that caused their remaining claims to previously be dismissed with prejudice.  *See* Opp. at 1-2.  Applying the standards outlined above, and for the

reasons set forth below, the Court respectfully recommends that Plaintiffs' Motion be denied in its entirety.

**A. <u>Plaintiffs' Proposed New and Revised Claims Fail as a Matter of Law</u>**

1. <u>Plaintiffs' Proposed Travel Expenses Claim</u>

Via the proposed Amended Complaint, Plaintiffs seek to assert a breach of contract claim against Defendants for their alleged failure to reimburse Plaintiffs for travel expenses in the amount of $25,000. *See* Am. Compl. ¶¶ 75-76. Defendants argue that this claim is futile because such a claim is barred by Plaintiffs' failure to comply with the conditions precedent necessary to coverage under the Policy. Opp. at 12-14.

Absent contract terms to the contrary, New York law governs common law contract claims when a federal court sits in diversity in New York. *Pearson v. Walden Univ.*, 144 F. Supp. 3d 503, 508 (S.D.N.Y. 2015). "To establish a claim for breach of contract under New York law, a plaintiff must demonstrate '(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" *Zorbas v. U.S. Tr. Co.*, 48 F. Supp. 3d 464, 474 (E.D.N.Y. 2014) (quoting *Johnson v. Nextel Commc'ns*, Inc., 660 F.3d 131, 142 (2d Cir. 2011)). Further, "[n]o action for breach of contract lies where the party seeking to enforce the contract has failed to perform a specified condition precedent." *POSCO Energy Co. v. FuelCell Energy, Inc.*, 560 F. Supp. 3d 747, 753 (S.D.N.Y. 2021) (quoting *Phoenix Signal & Elec. Corp. v. N.Y. State Thruway Auth.*, 90 A.D.3d 1394, 1396-97, 935 N.Y.S.2d 201 (3d Dep't 2011). "A condition precedent is an act of event, other

than a lapse of time, which . . . must occur before a duty to perform a promise in the agreement arises." *POSCO Energy Co.*, 560 F. Supp. 3d at 753 (quoting *Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 397, 305 (2d Cir. 2016)).  Where a defendant asserts non-compliance with a condition precedent, the burden shifts to the plaintiff to demonstrate that such conditions were met. *Mendez v. Bank of Am. Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 650 (E.D.N.Y. 2012).  Under the Policy, claims for "other expenses" include "all reasonable and necessary expenses, other than medical expense and work loss . . . for a period of one year from the date of the accident[-]causing injury."  Policy at 15.  Written proof of claims for "other necessary expenses" must be submitted to State Farm "as soon as reasonably practicable but, in no event, later than 90 days after . . . the other necessary services are rendered" to trigger coverage.  *Id.* at 17-18.

Plaintiffs' proposed travel expenses claim is barred by Plaintiffs' failure to comply with a condition precedent to coverage under the Policy.  Given that the accident occurred on April 23, 2017, and that claims for "other expenses" under the policy are recoverable for a period of one year from the date of the accident, Plaintiffs' travel expenses were covered until April 23, 2018.  *See id.* at 15.  Further, because claims for other expense coverage were required to be submitted no later than 90 days after the services were rendered, all such claims must have been submitted by July 23, 2018.  *See id.* at 17-18.  Plaintiffs allege that they sought reimbursement for their travel expenses for the first time on July 26, 2019, which is over one year too late. *See* Am. Compl. ¶ 76.  As a result, Plaintiffs have failed to allege compliance with a

condition precedent under the policy such that their breach of contract claim for failure to pay travel expenses fails as a matter of law.  *See POSCO Energy Co.,* 560 F. Supp. 3d at 754 (holding plaintiff failed to state a claim for breach of contract based on non-compliance with a condition precedent); *Patel v. Baluchi's Indian Rest.*, No. 08-cv-9985, 2009 WL 2358620, at *8 (S.D.N.Y. Jul. 30, 2009) (same).  Accordingly, the Court respectfully recommends that Plaintiffs' motion to amend the Complaint to include this claim be denied.

## 2.  Plaintiffs' Revised Lost Wages Claim

Plaintiffs also seek to amend their breach of contract claim for failure to reimburse lost wages.  *See* Am. Compl. ¶¶ 77-84.  The allegations underlying this cause of action are identical to their original claim, except that Plaintiffs now seek $74,933.33, rather than $144,000, and added allegations regarding the July 2020 arbitration award.  *Id.* at ¶¶ 82-83.  Defendants argue that Plaintiffs have not alleged new facts sufficient to cure the defects in their lost wage claim, which this Court previously recommended be dismissed as barred by *res judicata.  See* Opp. at 10.

In a diversity action, the law governing the doctrine of *res judicata* is "the law that would be applied by state courts in the State in which the federal diversity court sits."  *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 508, 121 S. Ct. 1021 (2001)).  Under New York law, the doctrine of *res judicata* "provides that a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action."  *Duane Reade, Inc.*, 600

F.3d at 195 (internal quotation marks omitted); *see Tovar v. Tesoros Prop. Mgmt., LLC*, 119 A.D.3d 1127, 1128, 990 N.Y.S.2d 307, 309 (3rd Dep't 2014).  To determine whether *res judicata* precludes subsequent litigation, a court must find that: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (alterations in original) (internal quotation marks and citations omitted).  "There is no question" that the principles of *res judicata* apply to awards in arbitration. *See New York State Dep't of Labor (Unemployment Ins. Appeal Bd.) v. New York State Div. of Human Rights*, 71 A.D.3d 1234, 1236, 897 N.Y.S.2d 740, 741 (3d Dep't 2010) (*citing Matter of American Ins. Co.*, 43 N.Y.2d 184, 189-90, 401 N.Y.S.2d 36, 38-39 (1977)); *see also Ammcon, Inc. v. Kemp*, 826 F. Supp. 639, 645 (E.D.N.Y. 1993).  To determine whether particular claims are part of the same transaction, New York courts analyze "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 472 (S.D.N.Y. 2009).

Applying the above standards, the Court concludes that Defendants have satisfied the three elements necessary to apply the doctrine of *res judicata* and preclude Plaintiffs' lost wages claim in its revised form.  Lee and State Farm participated in the arbitration, which concerned Lee's reimbursement for lost wages

between April 23, 2017 and September 30, 2018, and resulted in an award of $68,000. *See* Arb. Award.  Plaintiffs' lost wage claim asserted in this action therefore "[was], or could have been, raised in the prior action."  *Pike,* 266 F.3d at 91.  Accordingly, any claim for Lee's lost wages pertaining to a subsequent time period should have been raised during the arbitration, and is therefore barred by *res judicata.*  Given that Plaintiffs have not alleged any additional facts concerning their lost wages claim, the Court determines that Plaintiffs' amendment is futile, and Plaintiffs' Motion with respect to this claim should be denied.

### 3.  Plaintiffs' Revised Punitive Damages Claim

Next, Plaintiffs seek to amend their claim for punitive damages to seek an additional $1 million – $2 million dollars in total.  *See* Am. Compl. ¶ 106.  Defendants argue that because Plaintiffs have not alleged any additional facts in support of this claim, Plaintiffs' motion to amend is again futile and should be denied.  *See* Opp. at 14.

A federal court sitting in diversity must apply state law to determine the propriety of an award of punitive damages.  *Motorola Credit Corp. v. Uzan,* 509 F.3d 74, 80 (2d Cir. 2007).  In New York, punitive damages are not recoverable for an ordinary breach of contract, as their purpose is not to remedy a private wrong but to vindicate public rights.  *See Rocanova v. Equitable Life Assur. Soc.,* 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 342-43 (1994); *Reads Co., LLC v. Katz,* 72 A.D.3d 1054, 1056-1057, 900 N.Y.S.2d 131, 133-34 (2d Dep't 2010).  To state a claim for punitive damages, a plaintiff must plead: (i) the defendant's conduct is actionable as an

18

independent tort; (ii) the alleged tortious conduct is of an egregious nature; (iii) the egregious conduct is directed at the plaintiff; and (iv) the egregious conduct is part of a pattern directed at the public generally. *See New York University v. Continental Ins. Co.*, 87 N.Y.2d 308, 315, 639 N.Y.S.2d 283, 287 (1995). Further, in order to recover punitive damages against an insurance carrier, a plaintiff must demonstrate that the carrier, in its dealings with the general public, engaged in a fraudulent scheme evincing such a high degree of moral turpitude and such wanton dishonesty as to imply a criminal indifference to civil obligations. *See id.; Rocanova*, 83 N.Y.2d at 613, 612 N.Y.S.2d 339, 342-43. Punitive damages are not available for an isolated transaction such as breach of an insurance contract, even if committed willfully and without justification. *See Tate v. Metropolitan Life Ins. Co.*, 186 A.D.2d 859, 860, 587 N.Y.S.2d 813, 814 (3d Dep't 1992).

Given that Plaintiffs have failed to state any additional facts in support of its claim for punitive damages, the Court concludes that such a claim fails as a matter of law for the same reasons set forth in its prior Report and Recommendation on Defendants' Motion to dismiss. *See* R&R at 27-29. Plaintiffs have failed to plead any specific factual allegations that Defendants committed any intentional wrongdoing or acted with reckless disregard for Plaintiffs' rights. Accordingly, Plaintiffs' proposed amendment to its punitive damages claim is futile, and the Court recommends that Plaintiffs' Motion with respect to this claim be denied.

**B. Plaintiffs' Remaining Claims Fail as a Matter of Law**

The proposed Amended Complaint further asserts causes of action for: (1) breach of contract for failure to reimburse the actual cash value for a total loss of the Vehicle or total costs of the repairs; (2) fraudulent transfer of insurance policy benefits; (3) breach of the implied covenant of good faith and fair dealing and "unfair trade practices," and (4) "economic coercion, harassment, and emotional distress." *See generally* Am. Compl. The allegations comprising each of these claims are identical to those asserted in the original Complaint. *Compare* Am. Compl., *with* Compl. The Court again reviews each in turn.

### 1. Breach of Contract – Cost of Repairs

In the Amended Complaint, Plaintiffs assert a breach of contract claim for failure to reimburse costs of automobile repairs. *See* Am. Compl. ¶¶ 88-90. This cause of action remains barred by the one-year suit limitations period under the Policy. *See* Policy at 42-43, 59. New York courts have routinely found contract-based limitations periods that shorten the otherwise applicable limitations period in which a party to a contract must bring suit under the contract to be valid and enforceable. *See Hudecek v. Travelers Ins. Co.*, No. 17-cv-7160, 2018 WL 6521915, at *5 (E.D.N.Y. Dec. 4, 2018), *report and recommendation adopted*, 2019 WL 456173 (E.D.N.Y. Feb. 5, 2019) ("The highest court of this state has held that an insured must comply with a property insurance policy's time to sue provisions if it wishes to litigate a denial of coverage."); *Corbett v. Firstline Security, Inc.*, 687 F. Supp. 2d 124, 128-29 (E.D.N.Y.

2009); *John v. State Farm Mut. Auto. Ins.* Co., 116 A.D.3d 1010, 1011-12, 983 N.Y.S.2d 883, 884 (2d Dep't 2014).

Here, the Policy permitted legal action against State Farm for "physical damages" only if such action "[was] brought against [State Farm] within one year immediately following the date of the accident or loss." Policy at 42-43, 59. Given that the accident occurred on April 23, 2017, *see* Am. Compl. ¶ 10, Plaintiffs were required to commence legal action by April 23, 2018. Plaintiffs did not file their Complaint until April 30, 2020 however, over two years later. Accordingly, and for the same reasons stated in this Court's previous Report and Recommendation, Plaintiffs' claim for automobile repair costs fails as a matter of law, rendering its proposed amendment futile. The Court respectfully recommends that Plaintiffs' Motion be denied with respect to this cause of action.

## 2. Fraudulent Transfer of Insurance Policy Benefits

Plaintiffs also assert a claim for fraudulent transfer of insurance policy benefits again identical to that in the Complaint. *Compare,* Am. Compl. ¶¶ 91-94, *with* Compl. ¶¶ 109-12. The Court previously recommended that this cause of action be dismissed with prejudice based on Plaintiffs' failure to plead the necessary elements of a fraud cause of action and that such cause of action is duplicative of their breach of contract claim, *see* R&R at 29-32, and this deficiency remains.

To establish a fraud claim, a plaintiff must allege that the defendant made a "material misrepresentation," knowing that it was false and intending to induce reliance, and that the plaintiff justifiably relied on the misrepresentation and

suffered damages as a result. *See IKB Int'l S.A. v. Bank. of Am. Corp.*, 584 Fed. App'x 26, 27 (2d Cir. 2014) (internal quotation marks and citation omitted).   Moreover, Plaintiffs' fraudulent transfer claim is subject to a heightened pleading requirement pursuant to Fed. R. Civ. P. 9(b*). See TIC Park Ctr. 9, LLC*, 2017 WL 7733134, at *6 (citations omitted). As a result, the complaint must state with particularity the circumstances constituting fraud, meaning that it must: "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *IKB Int'l S.A.*, 584 Fed. App'x at 27-28 (internal quotation marks and citation omitted).

Here, Plaintiffs once again failed to allege that:  (1) State Farm intended to defraud Plaintiffs; (2) Plaintiffs reasonably relied on any misrepresentation made by State Farm; or (3) Plaintiffs suffered damages as a result of such reliance.  These flaws remain fatal. *See Stein v. Doukas*, 98 A.D.3d 1024, 1025, 951 N.Y.S.2d 173, 175 (2d Dep't 2012).  Moreover, Plaintiffs have not set forth facts alleging a legal duty independent of the contract, such that their fraud claim is duplicative of their breach of contract cause of action.  *See Clarke-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 656-57 (1987).  Accordingly, the Court respectfully recommends that Plaintiffs' Motion be denied as to this claim.

3.  Breach of Implied Covenant of Good Faith and Fair Dealing and "Unfair Trade Practices

Plaintiffs also reassert their cause of action for breach of the implied covenant of good faith and fair dealing and "unfair trade practices," with identical allegations

to those in the original Complaint. *Compare,* Am. Compl. ¶¶ 95-106, *with* Compl. ¶¶ 113-24. This claim fails for the same reason stated in this Court's prior Report and Recommendation, *i.e.,* that this cause of action is duplicative of its breach of contract claim. *See* R&R at 32-34.

A breach of the implied covenant of good faith and fair dealing is considered a breach of contract, and a complaint containing both claims is redundant as a matter of law. *See Thyroff v. Nationwide Mut. Ins.* Co., 460 F.3d 400, 407 (2d Cir. 2006) (The covenant of good faith and fair dealing "applies where an implied promise is so interwoven into the contract 'as to be necessary for effectuation of the purposes of the contract.'") (internal quotation and citation omitted); *Harris v. Provident Life & Acc. Ins. Co.,* 310 F.3d 73, 81 (2d Cir. 2002). Moreover, to the extent Plaintiffs allege "deceptive trade practices" by State Farm in violation of New York's General Business Law ("GBL") § 349, they must plead: (i) acts or practices by State Farm that are "consumer-oriented"; (ii) that such acts or practices are deceptive or misleading in a material way, and (iii) that Plaintiffs have been injured by those acts. *See Gaidon v. Guardian Life Ins. Co. of Am.,* 94 N.Y.2d 330, 343-44, 704 N.Y.S.2d 177, 183 (1999). Further, it is well-settled that disputes between policyholders and insurance companies concerning the scope of coverage "are nothing more than private contractual disputes that lack the consumer impact necessary to state a claim pursuant to Section 349." *DePasquale v. Allstate Ins. Co.,* 179 F. Supp. 2d 51, 62 (E.D.N.Y.), aff'd, 50 Fed. App'x 475 (2d Cir. 2002).

Here, Plaintiffs once again fail to set forth independent facts to support their breach of implied covenant of good faith and fair dealing claim, and merely reframe their breach of contract as a different cause of action. Both claims are based on the same conduct, allege the same damages, and seek the same relief. Therefore, this cause of action fails as a matter of law. *See Funk v. Allstate Ins. Co.*, No. 13-cv-5933, 2013 WL 6537031, at * 4 (E.D.N.Y. Dec. 13, 2013) (holding that when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith ad fair dealing based on the same facts, the latter should be dismissed as redundant). Similarly, the Amended Complaint fails to plead the necessary elements of a GBL § 349 claim. Plaintiffs do not allege that State Farm engaged in consumer-facing conduct or that Plaintiffs were injured by anything other than the alleged breach of contract. *See Gaidon*, 94 N.Y.2d at 343-44. This renewed claim therefore fails as a matter of law and is futile. As such, the Court respectfully recommends that Plaintiffs' Motion be denied with respect to this cause of action.

### 4.  Economic Coercion, Harassment, and Emotional Distress

Plaintiffs' final cause of action for economic coercion, harassment and emotional distress also contains the same allegations as the Complaint. *Compare,* Am. Compl. ¶¶ 107-12, *with* Compl. ¶¶ 125-30. Again, this claim fails.

Under New York state law, a party alleging economic coercion or duress may "void a contract and recover damages when it establishes that it was compelled to agree to the contract terms because of a wrongful threat by the other party which precluded the exercise of its free will." *805 Third Avenue Co. v. M.W. Realty Assoc.*,

58 N.Y.2d 447, 451, 461 N.Y.S.2d 778, 780 (1983) (internal citations omitted). Additionally, New York law does not recognize a claim for civil harassment, *see Pandozy v. Tobey*, 335 Fed. App'x 89, 91 (2d Cir. 2009) (citing *New York ex rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 486 (S.D.N.Y. 2006)), while an intentional infliction of emotional distress claim "requires a showing of: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.'" *Williams v. Geraci*, No. 14-cv-5742, 2020 WL 5848738, at *6 (E.D.N.Y. Sept. 30, 2020) (quoting *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019)).

Here, the economic coercion component of Plaintiffs' claim fails because they do not seek to void the Policy, but rather seek to enforce their rights under the Policy. *See generally* Am. Compl.  Moreover, the harassment portion fails because a breach of contract "[can]not be considered a tort unless a legal duty independent to of the contract itself has been violated" and the "legal duty must spring from circumstances extraneous to . . . the contract." *Clarke-Fitzpatrick, Inc.*, 70 N.Y.2d at 389, 521 N.Y.S.2d at 656-57.  The facts underlying Plaintiffs' alleged harassment derive from State Farm's breach of the Policy, *see* Am. Compl. ¶¶ 107-12, and Plaintiffs do not allege violation of an independent legal duty.  Finally, the emotional distress component fails because damages for emotional distress are unavailable where, as here, the parties' relationship is based in contract. *See Harary v. Allstate Ins. Co.*, 983 F. Supp. 95, 100 (E.D.N.Y. 1997).  Accordingly, this cause of action fails as a

matter of law and the Court respectfully recommends that Plaintiffs' Motion be denied as to this claim.

### C. Plaintiffs' Claims Against Hromas Fail as a Matter of Law

Lastly, Plaintiffs Amended Complaint names Defendant Hromas as a party to each of its claims. *See generally* Am. Compl. The Court previously recommended that all claims against Hromas be dismissed with prejudice based on her status as State Farm's agent. *See* R&R at 18-20. Specifically, the Court concluded that Plaintiffs failed to sufficiently allege that Hromas intended to "substitute or superadd [her] personal liability" for that of State Farm, such that she could be held liable as State Farm's agent under New York law. *See id.* (quoting *Mencher v. Weiss,* 396 N.Y. 1, 4, 114 N.E.2d 177, 179 (1953)). The proposed Amended Complaint does not assert any additional allegations concerning Hromas' conduct. To the extent that the proposed Amended Complaint purports to assert any causes of action against Hromas, the Court therefore concludes that such claims fail as a matter of law and amendment would be futile. As such, the Court respectfully recommends that Plaintiffs' Motion with respect to their claims against Hromas be denied.

### IV.    CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Plaintiffs' Motion be denied.

### V.    OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt

of this report.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, No. 05-cv-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:    Central Islip, New York
          September 5, 2023              /s/ Steven I. Locke
                                         STEVEN I. LOCKE
                                         United States Magistrate Judge